**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ROTHSCHILD DIGITAL CONFIRMATION, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ACUMATICA, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) C.A. No. 19-1108-MN |

**OPENING BRIEF IN SUPPORT OF DEFENDANT ACUMATICA, INC.'S**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**
<u>**FOR FAILURE TO STATE A CLAIM**</u>

*Of Counsel:*

WILLKIE FARR & GALLAGHER LLP

Eugene L. Chang
M. Diana Danca
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
echang@willkie.com
ddanca@willkie.com

PHILLIPS, GOLDMAN, MCLAUGHLIN & HALL, P.A.

John C. Phillips, Jr. (#110)
Megan C. Haney (#5016)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
jcp@pgmhlaw.com
mch@pgmhlaw.com

*Attorneys for Defendant*

Dated:  September 5, 2019

# TABLE OF CONTENTS

**Page**

I.     Nature and Stage of the Proceedings ....................................................................1

II.    Summary of Argument ........................................................................................2

III.   The '872 Patent ...................................................................................................5

IV.    Legal Standards...................................................................................................8

V.     Argument ............................................................................................................9

   A. RDC's Complaint Does Not Plead Sufficient Facts Showing Direct Infringement, the
      Specific Intent or Knowledge Required to Support a Claim of Indirect Infringement..9

      1. RDC Fails to Plausibly Allege Direct Infringement of Claim 1 of the '872 Patent 9

      2. RDC Fails to Plausibly Allege Knowledge and Specific Intent Required to
         Support an Indirect Infringement Claim ................................................................11

   B. RDC's Complaint Should Be Dismissed Because the Asserted Claims Are Patent-
      Ineligible Under 35 U.S.C. § 101 ..............................................................................12

      1. Alice Step 1: The Claims Are Directed To The Abstract Idea Of Associating Data
         With Pictures...........................................................................................................14

      2. Alice Step 2: The Claims Do Not Contain an Inventive Concept Sufficient to
         Confer Patent Eligibility ........................................................................................16

VI.    Conclusion ........................................................................................................18

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co.,*
    501 F.3d 1307 (Fed. Cir. 2007)..................................................................................9

*Alice Corp. Pty. Ltd. v. CLS Bank International.,*
    134 S. Ct. 2347 (2014) ................................................................................ *passim*

*Asghari-Kamrani v. United Servs. Automobile Ass'n.,*
    No. 15-cv-478, 2016 WL 3670804 (E.D. Va. July 5, 2016)...................................17

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.,*
    569 U.S. 576 (2013)..............................................................................................13

*Berkheimer v. HP INC.,*
    881 F.3d 1360 (Fed. Cir. 2018), *petition for cert. filed,*
    No. 18-415, 2018 WL 4819013 (U.S. Sept. 28, 2018) ..........................................13

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.,*
    681 F.3d 1323 (Fed. Cir. 2012)...............................................................................8

*Commil USA, LLC v. Cisco Sys., Inc.,*
    135 S. Ct. 1920 (2015).........................................................................................11

*Commil USA, LLC v. Cisco Sys., Inc.,*
    720 F.3d 1361 (Fed. Cir. 2013), *rev'd on other grounds,*
    135 S. Ct. 1920 (2015)......................................................................................3, 11

*DSU Medical Corp. v. JMS Co., Ltd.,*
    471 F.3d 1293 (Fed. Cir. 2006)..............................................................................11

*e.Digital Corp. v. iBaby Labs., Inc.,*
    Case No. 15-cv-05790-JST, 2016 WL 4427209 (N.D. Cal. Aug. 22, 2016)...........10

*Global-Tech. Appliances, Inc. v. SEB S.A.,*
    536 U.S. 754 (2011).........................................................................................3, 11

*GoDaddy.com LLC v. RPost Commc'ns Ltd.,*
    No. 14-cv-126, 2016 WL 3165536 (D. Ariz. June 7, 2016) ..................................17

*Intellectual Ventures I LLC v. Capital One Fin. Corp.,*
    850 F.3d 1332 (Fed. Cir. 2017)..............................................................................18

*Limelight Networks, Inc. v. Akamai Techs., Inc.,*
    572 U.S. 915 (2014)........................................................................................3, 11

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
  566 U.S. 66 (2012)............................................................................12, 16

*Mitek Sys., Inc. v. Rothschild Mobile Imaging Innovations, LLC,*
  IPR2015-00624, Paper No. 24 (P.T.A.B. Dec. 7, 2015) ...........................................1

*Modern Telecom Sys., LLC v. TCL Corp.,*
  No. 17-583-LPS-CJB, 2017 WL 6524526 (D. Del. Dec. 21, 2017).........................................9

*MONEC Holding AG v. Motorola Mobility, Inc.,*
  897 F. Supp. 2d 225 (D. Del. 2012)...................................................3, 12

*North Star Innovations, Inc. v. Micron Tech., Inc.,*
  No. 17-506-LPS-CJB, 2017 WL 5501489 (D. Del. Nov. 16, 2017) ..................................9, 10

*Pieczenik v. Abbott Labs.,*
  No. 10-2230 (JAP), 2011 WL 1045347 (D.N.J. Mar. 23, 2011) ............................12

*Rothschild Connected Devices Innovations, LLC v. Guardian Protection Services, Inc.,*
  858 F.3d 1383 (Fed. Cir. 2017)........................................................................1

*Rothschild Location Techs. LLC v. Geotab USA, Inc.,*
  No. 6:15-cv-682-RWS-JDL, 2016 WL 2847975 (E.D. Tex. May 16, 2016) .........................13

*Secure Cam, LLC v. Tend Insights, Inc.,*
  351 F. Supp. 3d 1249 (N.D. Cal. 2018) ..........................................15, 18

*Superior Indus., LLC v. Thor Global Enters. Ltd.,*
  700 F.3d 1287 (Fed. Cir. 2012)...........................................................11

*In re TLI Commc'ns LLC Patent Litig.,*
  823 F.3d 607 (Fed. Cir. 2016)..............................................4, 15, 16, 18

*Toshiba Corp. v. Imation Corp.,*
  681 F.3d 1358 (Fed. Cir. 2012)........................................................3

*Ultramercial, Inc. v. Hulu, LLC,*
  772 F.3d 709 (Fed. Cir. 2014)....................................................14, 18

*Versata Software, Inc. v. Cloud9 Analytics, Inc.,*
  Civil Action No. 12–925–LPS, 2014 WL 631517 (D. Del. Feb. 18, 2014),
  *report and recommendation adopted*, 2014 WL 1091751 (D. Del. Mar. 14, 2014).................8

*Voter Verified, Inc. v. Election Sys. & Software LLC,*
  887 F.3d 1376 (Fed. Cir. 2018).......................................................13

## Statutes, Rules and Regulations

35 U.S.C. § 271(b) ......................................................................2, 3, 11

Fed. R. Civ. P. 8(a)(2)..................................................................................................8

Fed. R. Civ. P. 12(b)(6)...............................................................................................8

Defendant Acumatica, Inc. ("Acumatica") respectfully submits this Motion to Dismiss Plaintiff Rothschild Digital Confirmation, LLC's ("RDC") First Amended Complaint ("Amended Complaint") under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## I.   NATURE AND STAGE OF THE PROCEEDINGS

RDC is one of at least twelve non-practicing patent assertion entities founded by the alleged inventor of the patent-in-suit, Leigh M. Rothschild.  These patent assertion entities have, collectively, brought over 350 infringement suits since 2014.  The vast majority of these lawsuits never pass the initial pleading stage, and none of these lawsuits has reached claim construction. The Federal Circuit found this pattern to be "undisputed evidence [of] vexatious litigation" in reversing and remanding for an award of attorney fees against another Rothschild shell company. *Rothschild Connected Devices Innovations, LLC v. Guardian Protection Services, Inc*., 858 F.3d 1383, 1389-90 (Fed. Cir. 2017) (citing *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015)).  With this lawsuit, RDC continues that pattern.

Plaintiff RDC has alleged infringement of the patent-in-suit in thirty-nine separate cases, including thirteen in this district.  Following the institution of an Inter Partes Review ("IPR") in connection with one of these assertions, RDC requested cancellation of claims 27, 28, 38, and 39 of the '872 patent, which the PTAB granted.  *See Mitek Sys., Inc. v. Rothschild Mobile Imaging Innovations, LLC*, IPR2015-00624, Paper No.  24, at 2-3 (P.T.A.B. Dec. 7, 2015) (attached hereto as Exhibit B).  The U.S. Patent and Trademark Office issued an IPR Certificate cancelling those claims on February 8, 2018.

RDC's original complaint, filed on June 15, 2019, asserted that Acumatica's Accused Product directly infringed claim 27 of the '872 patent, even though that claim had been cancelled more than a year earlier.  (D.I. 1.)  After Acumatica informed RDC that maintaining its assertion

1

of infringement of a cancelled claim would be a Rule 11 violation, RDC filed the Amended Complaint on August 14, 2019, asserting indirect infringement of at least claim 1 of the '872 patent.  (D.I. 8, at ¶ 38.)

Acumatica's Accused Product is a field service management software application that is available for installation on any mobile device.  *See* https://www.acumatica.com/blog/field-service-management-software-integrated-erp-provides-orchestrated-workflow/?utm_source=sumome&utm_medium=email&utm_campaign=sumome_share.  Once appointments are created by a dispatcher, the field technician can log in, select the appointment and travel to the appropriate location.  *Id*.  After arriving at the location, the technician can click on "Start Appointment" and the mobile device will record that the appointment is in progress. *Id*.  After completing the work, the technician can take pictures to document the completed work, but the application does not require it.  *Id*.

## II.    <u>SUMMARY OF ARGUMENT</u>

RDC's Amended Complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Since it is undisputed that Acumatica does not directly infringe claim 1 of the '872 patent, RDC alleges indirect infringement based on Acumatica "actively inducing . . . customers, users, and/or licensees to directly infringe by using the Accused Product in a manner that infringes the '872 patent."  (D.I. 8, at ¶ 38.)  But these allegations are fatally deficient, as the Amended Complaint not only fails to allege direct infringement of all of the limitations of claim 1, but also fails to allege the specific intent required to induce infringement.  Finally, the claims of the '872 patent are drawn to an abstract concept that is not patent-eligible under Section 101 of the Patent Act.

To prove induced infringement under 35 U.S.C. § 271(b), a plaintiff must show direct infringement of the patent, and that the defendant knowingly induced such infringement with

"specific intent to encourage another's infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (internal quotations omitted).  The Amended Complaint fails to plead any of these elements.  In particular, RDC has not even alleged, and indeed cannot prove, that a mobile device with Acumatica's mobile application installed "verifies the identity of the user of the device ***at the time of the image capture***" as required by claim 1.  Without direct infringement, a claim of indirect infringement cannot stand.  *See e.g.*, *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 919 (2014) (holding a defendant cannot be liable for inducement of infringement without direct infringement).

RDC fails to plead that Acumatica "knowingly" induced infringement.  The Amended Complaint alleges only that Acumatica "knew or should have known that its action would induce direct infringement by others . . . ."  (D.I. 8, at ¶ 38.)  But it is black letter law that "knew or should have known" cannot establish the knowledge prong of induced infringement.  *Global-Tech. Appliances, Inc. v. SEB S.A.*, 536 U.S. 754, 766-67 (2011) ("Accordingly, we now hold that induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement."); *see also Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1366 (Fed. Cir. 2013), *rev'd on other grounds*, 135 S. Ct. 1920 (2015) (finding "knew or should have known" jury instruction was erroneous and "no longer good law").

RDC's allegations also fail to show that Acumatica specifically intended to induce its customers to infringe the claims of the '872 patent.  Moreover, RDC pleads no facts to support this allegation, and conclusory assertions without factual support cannot meet the pleading standard for inducement of infringement.  *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 234 (D. Del. 2012) ("Allegations of the marketing activities of the Defendants do not, on their own, demonstrate that Defendants knew such activities were infringing or that

Defendants possessed the specific intent to encourage another's infringement.") (dismissing claims for induced infringement).

Lastly, the '872 patent fails the two-part test for patent eligibility set forth by the Supreme Court in *Alice Corp. Pty. Ltd. v. CLS Bank International.*, 134 S. Ct. 2347, 2355 (2014). This framework first analyzes "whether the claims at issue are directed to [ ] patent-ineligible concepts," and, if so, "we then ask 'what else is there in the claims before us,'" in a "search for an inventive concept." *Id.* (internal quotations omitted). Here, the claims of the patent-in-suit are directed to the abstract idea of collecting and associating information with digital images for the purpose of organization, processing, and control. By its plain language, the '872 patent is directed to "digital image and data processing," and more specifically to "devices, systems and methods for embedding information" (location, time and date, and user verification information) in digital images and using such information to organize, process and control the digital images. (Ex. A, '872 patent, at 1:22-28). Such abstract classification and association are the hallmark of ineligible subject matter; indeed, the Federal Circuit has recognized that "attaching classification data, such as dates and times, to images for the purpose of storing those images in an organized manner is a well-established 'basic concept' sufficient to fall under *Alice* step 1." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016).

Nor do the claims of the '872 patent "transform the nature of the claim into a patent-eligible application." *Alice*, 134 S. Ct. at 2355. Indeed, they simply recite the abstract idea of collecting and associating information with digital images for organization, processing, and control without any additional elements that are "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (quotation

omitted).  The claimed modules here do nothing more than collect and associate specific information – such as assignment, the user identity, location information, and the time and date – with a digital image file.  Notably, throughout the specification of the '872 patent, RDC has repeatedly characterized each of the modules of the claimed invention as "standard" and/or "conventional."  (*See, e.g.*, '872 patent at 3:55; 5:54-63; 6:4-9; 6:32-35; 7:32-38; 7:46-49; 11:28-35; 12:30-35; 13:58-61; 14:50-58).  In fact, the '872 patent employs the terms "standard" and "conventional" at least twenty times to describe the ideas embodied in its claims.  The remaining computer components recited in the claims perform well-understood, routine activities, such as "user verification" and "encrypting," without an additional inventive concept sufficient to confer patentability.  *See Alice*, 134 S. Ct. at 2350 ("The introduction of a computer into the claims does not alter the analysis.").  In sum, the claims of the '872 patent are plainly directed to a patent-ineligible abstract idea, and this Court is well within its discretion to dispose of this case on the pleadings.

Thus, Acumatica respectfully submits that RDC's entire First Amended Complaint be dismissed under Rule 12(b)(6) for failure to state a claim for which relief can be granted.

## III.   <u>THE '872 PATENT</u>

The '872 patent, issued on November 25, 2008, is titled "Device and Method For Embedding and Retrieving Information in Digital Images" and describes the abstract concept of associating information with digital images.  By its own plain language, the alleged invention "relates generally to digital image and data processing, and more particularly, ***to devices, systems and methods for embedding and retrieving information in digital images*** and using the information to organize, process and control the digital images."  (Ex. A, at 1:22-28 (emphasis added)).

In the "Summary" section of the '872 patent, the alleged invention is characterized as follows: "The present disclosure describes hardware devices, systems and methods that will facilitate embedding information into digital images of any type (e.g., jpeg, bmp, tiff, etc.) *to organize, control and manipulate these images* both while in digital form, and later when in printed form."  (*Id.* at 2:18-23) (emphasis added).  Additionally, "[t]he present disclosure describes *methods and systems of encoding digital images* whether still images or multiple images . . . with locational information, audio stream information, date and time information, and user identity information, and transmitting this information on the [Internet]."  (*Id.* at 2:24-30) (emphasis added).

The patent further provides illustrations of the claimed inventions.  Figures 1A and 1B are front and back views, respectively, of a device for capturing digital images and embedding information in the captured images, *i.e.*, a digital camera.  (*Id.* at 2:48-51).



Figure 4 of the '872 patent illustrates "a method for embedding information in a digital image" in accordance with the disclosure.  (*Id.* at 2:59-60).



FIG. 4

The '872 patent issued with two independent claims and thirty-seven dependent claims that are substantially similar and directed to the same abstract idea. Independent claim 27 and dependent claims 28, 38, and 39 were cancelled during IPR2015-00624. Claim 1, the sole remaining independent claim, recites:

> 1. A locational image verification device for verifying an assignment of a user comprising:
>
> a user verification module for verifying an identity of a user of the device, wherein upon verification, the user verification module enables operation of the device and provides an assignment to the user;
>
> a capture module for capturing an image relating to the assignment and creating a digital image file, wherein the user verification module verifies the identity of the user of the device at a time of the image capture;
>
> a locational information module for determining a location of the device when capturing the image;
>
> a date and time module for determining a date and time of the image capture;

7

> a processing module for associating the assignment, the user identity, location information and the time and date to the digital image file; and
>
> an encryption module for encrypting the digital image file and associated information upon image capture.

(*Id*. at 16:56-17:7).

## IV.   <u>LEGAL STANDARDS</u>

Pursuant to Rule 8, a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a complaint may be dismissed for failing to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In order to survive a motion to dismiss, a complaint alleging indirect infringement must "contain facts plausibly showing that [the alleged infringer] specifically intended [a third party] to infringe the [patents-in-suit] and knew that the [third party's] acts constituted infringement."  *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012); *see also Versata Software, Inc. v. Cloud9 Analytics, Inc.*, Civil Action No. 12–925–LPS, 2014 WL 631517, at *2 (D. Del. Feb. 18, 2014) ("With regard to pleading an induced infringement claim, a plaintiff must, *inter alia*, allege facts plausibly showing that the defendant had knowledge that the alleged direct infringer's acts constituted infringement."), *report and recommendation adopted*, 2014 WL 1091751 (D. Del. Mar. 14, 2014).  "While the plaintiff need not 'prove its case at the pleading stage,' a mere 'formulaic recitation' in the complaint of the language regarding this requirement [is] insufficient."  *Id.* (citing *Bill of Lading*, 681 F.3d at 1339).

V.   <u>**ARGUMENT**</u>

    A. **RDC's Complaint Does Not Plead Sufficient Facts Showing Direct Infringement, the Specific Intent or Knowledge Required to Support a Claim of Indirect Infringement**

RDC's Amended Complaint fails to allege facts, that even if taken as true, state a claim for induced infringement that is plausible on its face.  First of all, a claim of induced infringement requires a showing of direct infringement by another, and then not only knowledge of the patent but also specific intent to induce infringement of the patent.  RDC's Amended Complaint fails on both counts.

    1. **RDC Fails to Plausibly Allege Direct Infringement of Claim 1 of the '872 Patent**

To prove direct infringement by another, in the context of inducement, "a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit." *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007) (quoting *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1275–76 (Fed. Cir. 2004)).  In the context of alleging a claim for direct patent infringement, *Twombly* and *Iqbal* require RDC to plead facts that plausibly indicate that the accused products or methods practice ***each of the limitations found in the asserted claims***. *North Star Innovations, Inc. v. Micron Tech., Inc.*, No. 17-506-LPS-CJB, 2017 WL 5501489, at *1 (D. Del. Nov. 16, 2017); *Modern Telecom Sys., LLC v. TCL Corp.*, No. 17-583-LPS-CJB, 2017 WL 6524526, at *2 (D. Del. Dec. 21, 2017).

Here, the factual allegations fail to show direct infringement of claim 1 of the '872 patent.  The Amended Complaint is fatally deficient because it does not adequately allege direct infringement of all limitations of any claim of the '872 patent.

According to the Amended Complaint, RDC alleges that the limitation in claim 1 for "a capture module for capturing an image relating to the assignment and creating a digital image file, wherein *the user verification module verifies the identity of the user of the device at a time of the image capture*" is met because a user logs in to access and use Acumatica's Accused Product and "can also use the device to capture pictures of the environment and equipment." (D.I. 8-2 at 7).  However, the plain language of claim 1 of the '872 patent requires a user to be verified, *i.e.* to login, *at the time of the capture* of an image.  RDC contends that the general capability to login with a password to access and use Acumatica's Accused Product satisfies the requirement of user identification "at the time of the image capture."  *Id.* at 9.  Nowhere in any of Acumatica's instructions on how to use the Accused Product, is the user required to login at the time a digital image is captured, or to capture an image soon after login in, and RDC does not allege that any Acumatica user has done so.  Instead, Acumatica instructs its users to login *at the start of the appointment*, perform the service associated with the appointment, and *capture an image at the end of the appointment*, if necessary, to show "the completed work."  *Id.*  ("Using the mobile device's camera, *your technician can take a picture of the completed work* . . . .") (emphases added).  Thus, a user following the instructions provided by Acumatica would not login at the time of image capture, and RDC's allegations fail to specifically tie all limitations of claim 1 of the patent-in-suit to the operation of the Accused Product.  *North Star*, 2017 WL 5501489, at *2 (plaintiff "needs to plead facts that say something about what that view is—about what the accused product contains that meets these claim limitations (and the others) and that helps the Court understand why it is plausible that this is so."); *see also e.Digital Corp. v. iBaby Labs., Inc.*, Case No. 15-cv-05790-JST, 2016 WL 4427209, at *5 (N.D. Cal. Aug. 22, 2016) (finding that a plaintiff had not sufficiently pleaded direct infringement of a method claim when

it had not sufficiently articulated in its pleading how the accused products practiced one of the claim limitations).  Without direct infringement, the allegations of indirect infringement cannot stand.  *Limelight Networks*, 134 S. Ct. at 2116 (2014).

### 2. RDC Fails to Plausibly Allege Knowledge and Specific Intent Required to Support an Indirect Infringement Claim

Induced infringement under § 271(b) requires "not merely that the inducer had knowledge of the direct infringer's activities," but "knowledge that the induced acts constitute patent infringement."  *Global-Tech Appliances, Inc.*, 563 U.S. at 766 (2011); *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc* in relevant part) ("[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement[.]").  A claim of induced infringement will not survive a motion to dismiss where the plaintiff "does not allege any facts to support a reasonable inference that [the defendant] specifically intended to induce infringement . . . or that it knew it had induced acts that constitute infringement."  *Superior Indus., LLC v. Thor Global Enters. Ltd.*, 700 F.3d 1287, 1296 (Fed. Cir. 2012).

The Amended Complaint purports to meet this specific intent requirement by alleging that Acumatica "***knew or should have known*** that its action would induce direct infringement by others and intended that its actions would induce direct infringement by others."  (D.I. 8 at ¶ 38 (emphasis added).)  But the Federal Circuit and Supreme Court have long since rejected the "knew or should have known" standard for induced infringement.  Indeed, the standard set forth in *Global-Tech* "requires proof the defendant knew the [induced] acts were infringing.  And the Court's opinion [in *Global-Tech*] was clear in rejecting any lesser mental state as the standard." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1928 (2015); see also *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1366 (Fed. Cir. 2013), *rev'd on other grounds*, *Commil*, 563

U.S. 754 (2015 (finding "knew or should have known" jury instruction was erroneous and "no longer good law").  The Amended Complaint fails to plead a cause of action upon which relief may be granted, thus it should be dismissed.

In addition to reciting an improper standard, RDC also fails to allege any actions which, if taken as true, show that Acumatica specifically intended to induce customers to infringe claim 1 of the '872 patent.  The Amended Complaint asserts that Acumatica "actively induc[ed] and/or contribut[ed] to its respective customers, users, and/or licensees" direct infringement "by using the Accused Product in a manner that infringes the '872 patent."  (D.I. 8 at ¶ 38.)  RDC identifies only Acumatica's conduct in selling, advertising, supplying and instructing customers to use its product.  But RDC's mere conclusory assertions do not allege any knowledge or intent.  *See MONEC*, 897 F. Supp. 2d at 234; *see also Pieczenik v. Abbott Labs.*, No. 10-2230 (JAP), 2011 WL 1045347, at *7 (D.N.J. Mar. 23, 2011) (finding insufficient facts to support claim for inducement where plaintiff alleged that defendant sold the purportedly infringing items, but alleged no facts from which to infer knowledge or intent).  Thus, RDC's claim of induced infringement of the '872 patent must fail because RDC has failed to sufficiently plead a claim of direct infringement and failed to plead facts to support its bare allegations of Acumatica's knowledge or specific intent.

**B.  RDC's Complaint Should Be Dismissed Because the Asserted Claims Are Patent-Ineligible Under 35 U.S.C. § 101**

Abstract ideas are not patentable.  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70 (2012).  Nor are "inventions" that merely combine abstract ideas into generic computer functions for obvious, "purely conventional" uses.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2358 (2014).

"Patent eligibility has in many cases been resolved on motions to dismiss or summary judgment.  Nothing in this decision should be viewed as casting doubt on the propriety of those cases."  *Berkheimer v. HP INC.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018), *petition for cert. filed*, (No. 18-415), 2018 WL 4819013 (U.S. Sept. 28, 2018).  Factual allegations "taken as true, do not prevent a § 101 determination at the Rule 12(b)(6) stage."  *Voter Verified, Inc. v. Election Sys. & Software LLC,* 887 F.3d 1376, 1385–86 (Fed. Cir. 2018); *see also Rothschild Location Techs.  LLC v. Geotab USA, Inc.*, No. 6:15-cv-682-RWS-JDL, 2016 WL 2847975, at \*2 (E.D. Tex. May 16, 2016) (*citing, e.g.*, *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364 (Fed. Cir. 2015)) ("[W]hen patent claims on their face are plainly directed to an abstract idea, a court may properly assess patent-eligibility under § 101 at the pleading stage.").

Section 101 of the Patent Act provides that a patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101.  The Supreme Court has recognized that these broad categories contain certain exceptions: "[l]aws of nature, natural phenomena, and abstract ideas are not patentable."  *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 588 (2013) (internal quotation marks and citation omitted).  In applying this exception, courts "must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more."  *Alice* at 2354.

To be patentable, a claim directed towards a computer process must improve computer capabilities or, if it does not, it must contain a sufficiently "inventive concept," as determined by the two-step *Alice*/*Mayo* inquiry.  *Alice*, 134 S. Ct. at 2355.  As described above, the '872 patent

fails both steps of that test.[1]  The first prong asks courts to "first determine whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea.  *Alice*, 134 S. Ct. at 2355.  If so, the second step requires that courts then "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application."  *Id.* (internal quotations omitted).  Because the '872 patent is directed to patent-ineligible subject matter, this Court should find it invalid under § 101.

### 1. Alice Step 1: The Claims Are Directed To The Abstract Idea Of Associating Data With Pictures

The claims of the '872 patent are directed to the abstract idea of collecting and associating information with digital images.  The specification emphasizes repeatedly that the patented subject matter relates to "embedding and retrieving information in digital images and using the information to organize, process and control the digital images, where the information may include location information, time and date information and user verification information." ('872 patent at 1:22-28; ("The present disclosure describes hardware devices, systems and methods that will facilitate embedding information into digital images of any type (e.g., jpeg, bmp, tiff, etc.) to organize, control and manipulate these images both while in digital form, and later when in printed form."); and at 2:18-30 ("According to various embodiments, the present disclosure describes methods and systems of encoding digital images whether still images or multiple images . . . with locational information, audio stream information, date and time information, and user identity information, and transmitting this information on the [Internet].").

---

[1] In deciding patentability, a court need not review all claims, but only those that are representative of the claimed invention as a whole.  *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 712 (Fed. Cir. 2014) (reviewing only claim 1 as "representative" and noting "the other claims of the patent are drawn to a similar process" and therefore "suffer from the same infirmity as claim 1 and need not be considered further").

As an initial matter, courts have repeatedly held that the precise type of claims at issue here – those directed to the association of information with digital images to organize such images – are invalid under Section 101 as directed to ineligible subject matter. *TLI Comm's*, 823 F.3d at 613; *Secure Cam, LLC v. Tend Insights, Inc*., 351 F. Supp. 3d 1249, 1255-56 (N.D. Cal. 2018) ("[T]he claims at issue do not describe a specific improvement to digital camera functionality. Rather the claims at issue describe 'conventional or generic technology in a nascent but well-known environment.'"). *TLI* is illustrative; there, the patent was directed to "manually or automatically assigning 'classification data,' such as a date or timestamp, to digital images and sending those images to a server." 823 F.3d at 610. The Federal Circuit held that "attaching classification data, such as dates and times, to images for the purpose of storing those images in an organized manner is a well-established 'basic concept' sufficient to fall under *Alice* step 1." *Id*. at 613. Further, because "the recited physical components merely provide a generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized manner," *id*. at 611, 613, the patent claims at issue were no less abstract.

The holding in *TLI* controls step one of the patentability analysis here, as the claims of the '872 patent are not directed to a new mobile device or any improvement to computer functionality. The "device" recited in the preamble of independent claim 1 is nothing more than a generic conduit to carry out the abstract idea of collecting and associating information with digital images for organization, processing, and control. *See also Secure Cam*, 351 F. Supp. 3d at 1255 ("tag[ging] an image based on different algorithms and categorization factors" using a digital camera did not describe a "specific improvement to digital camera functionality."). In fact, the '872 patent uses plain language such as "standard," "conventional," "common," "widely in use" to describe the elements of the claim. *See, e.g.*, Ex. A ('872 patent) at 3:29-34

(describing a **conventional** camera for capturing an image); at 5:26-51 (describing standard password protection methods and identity detection devices that were "**common**" and "**widely in use**"); at 4:55-59 (describing input via a "**standard** keyboard interface"); at 5:52-60 (describing "**conventional** locational information processing technology"); at 6:5-7 (describing "**standard** computer chip processing technology **widely in use**"); and at 6:31-36 (describing "**conventional** code encryption algorithms currently in use")  (emphases added).  Thus, as in *Secure Cam* and *TLI Communications*, the claims of the '872 patent are drawn to abstract ideas.

## 2.   Alice Step 2: The Claims Do Not Contain an Inventive Concept Sufficient to Confer Patent Eligibility

The second step of the Alice/Mayo test examines whether the claim "contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357 (quoting *Mayo*, 566 U.S. at 72-73).  The claims of the '872 patent, which recite only a specific grouping of generic computer functions, fails this step. Appending to an abstract idea "conventional steps, specified at a high level of generality" does not add the necessary inventive concept to confer patent protection.  *Mayo*, 566 U.S. at 82.  *See also Alice*, 134 S. Ct. at 2357 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)); *TLI*, 823 F.3d at 613 (noting that components that involve only the "performance of well-understood, routine, conventional activit[ies] previously known to the industry" . . . "fail to add an inventive concept sufficient to bring the abstract idea into the realm of patentability") (internal quotations omitted).  "It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea." *TLI*, 823 F.3d at 613 (quoting *Alice*, 134 S. Ct. at 2359).

The claims of the '872 patent do no more than group together routine, conventional steps at a high level of generality.  Indeed, as above, the '872 patent uses plain language such as

"standard," "conventional," "common," "widely in use" to describe the elements of the claim. The claims themselves recite only generic "module" components present in nearly every mobile phone.  First, the "user verification" and "encryption" modules claimed in the '872 patent require conventional computing functionality according to known processes.  (Ex. A at 5:25-42 (stating that the "user verification module" may include "password protection" or an "identity capture device" that is "***common and . . . widely in use***"); at 6:32-37 (stating "[t]he encryption module 140 will use ***conventional code encryption algorithms currently in use*** . . . to encrypt the data information that comes into the user input module 124 and auxiliary input module 126, and optionally, to encrypt the digital image file").) (Emphases added.)

Notably, other courts have found that such "modules" do not add an inventive concept sufficiently capable of transforming an abstract idea into patentable subject matter.  *See, e.g.*, *Asghari-Kamrani v. United Servs. Automobile Ass'n.*, No. 15-cv-478, 2016 WL 3670804, at *5 (E.D. Va. July 5, 2016) (finding instructions to "verify the identity of a participant to a transaction" on a computer added no inventive concept but rather "have generic computers perform an old method of authentication"); *GoDaddy.com LLC v. RPost Commc'ns Ltd.*, No. 14-cv-126, 2016 WL 3165536, at *12, n.11 (D. Ariz. June 7, 2016) (finding no inventive concept where "the encryption and association methods described in the [patent] specification are described as 'widely used for security and for authentication purposes'").  Moreover, the claimed "capture module" is nothing more than a digital camera that is well known to be capable of transmitting image and classification data using conventional methods – and does not add an inventive concept.  Indeed, in *TLI*, the Federal Circuit held that the recitation of components such as a "telephone unit" or a "server" did not confer patentability where "the specification note[d] that it 'is known' that 'cellular telephones may be utilized for image transmission,'" the

"functions of the server are described in vague terms without any meaningful limitations" and "the focus of the patentee and of the claims was not on an improved telephone unit or an improved server." 823 F.3d at 612-614.

As a result, the claims only restate the known, conventional functions associated with the particular modules, such as identifying, capturing, mapping, time-stamping, organizing. "That is to say, they merely describe the functions of the abstract idea itself, without particularity. This is simply not enough under step two." *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017) (quotation omitted); *see also Ultramercial*, 772 F.3d at 715-16 (claims did not supply an inventive concept because they did not "do significantly more than simply describe [the] abstract method," but rather are simply "conventional steps, specified at a high level of generality").

In short, "there is an important common-sense distinction between ends sought and particular means of achieving them, between desired results (functions) and particular ways of achieving (performing) them. The ['872 patent] describe[s] the ends sought—analyzing and automatically categorizing digital images—without offering a particular inventive means of achieving this result." *Secure Cam* 351 F. Supp. 3d at 1257 (quoting *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016)). As a result, the patent-in-suit is invalid as directed to patent-ineligible subject matter.

Because the claims of the '872 patent fail the two-part test for patent eligibility in *Alice*, the Court should find the claims invalid under 35 U.S.C. § 101 and dismiss the complaint against Acumatica with prejudice.

## VI.   <u>CONCLUSION</u>

For the reasons set forth above, Acumatica's motion should be granted, and Plaintiff's Amended Complaint should be dismissed with prejudice.

| | |
|---|---|
| Dated:   September 5, 2019 | PHILLIPS, GOLDMAN, MCLAUGHLIN & HALL, P.A. |
| | */s/ John C. Phillips, Jr.* |
| | John C. Phillips, Jr. (#110) |
| | Megan C. Haney (#5016) |
| OF COUNSEL | 1200 North Broom Street |
| | Wilmington, DE 19806 |
| WILLKIE FARR & GALLAGHER LLP | (302) 655-4200 |
| | jcp@pgmhlaw.com |
| Eugene L. Chang | mch@pgmhlaw.com |
| M. Diana Danca | |
| 787 Seventh Avenue | *Attorneys for Defendant* |
| New York, NY 10019 | |
| (212) 728-8000 | |